**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 08-CR-66-LRR |
| vs. | |
| TRAVIS HAWKINS, | **SENTENCING MEMORANDUM** |
| Defendant. | |

_____

### *TABLE OF CONTENTS*

*I.* *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.* *RELEVANT PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . **2**

*III.* *SENTENCING FRAMEWORK* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

*IV.* *EVIDENTIARY RULES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

*V.* *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
    *A.* *Preparation for Robbery.* . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
    *B.* *Robbery.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
    *C.* *Investigation of Robbery.* . . . . . . . . . . . . . . . . . . . . . . . . . **9**

*VI.* *ISSUES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

*VII.* *OFFENSE LEVEL* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
    *A.* *Cross Reference—USSG §2K2.1(c)(1)(A)* . . . . . . . . . . . . . . . . **10**
        *1.* *Burden of proof* . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
        *2.* *Robbery as underlying offense* . . . . . . . . . . . . . . . . . . **12**
        *3.* *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
    *B.* *Using a Minor* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
        *1.* *Whether Defendant Hawkins "used" J.J.* . . . . . . . . . . . . **14**
        *2.* *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
    *C.* *Obstruction of Justice* . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
        *1.* *Improper influence over witness* . . . . . . . . . . . . . . . . . **16**
        *2.* *Other bases for enhancement* . . . . . . . . . . . . . . . . . . **17**
        *3.* *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
    *D.* *Acceptance of Responsibility* . . . . . . . . . . . . . . . . . . . . . . **19**

VIII.   *CRIMINAL HISTORY CATEGORY* . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

IX.     *ADVISORY SENTENCING GUIDELINES RANGE* . . . . . . . . . . . . . . . **21**

X.      *FACTORS IN 18 U.S.C. § 3553(a)* . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

XI.     *ALTERNATE VARIANCE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

XII.    *DISPOSITION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **26**

## *I.  INTRODUCTION*

The matter before the court is the sentencing of Defendant Travis Hawkins ("Defendant Hawkins").

## *II.  RELEVANT PRIOR PROCEEDINGS*

On November 19, 2008, a grand jury returned a three-count Superseding Indictment ("Superseding Indictment") (docket no. 15) against Defendant Hawkins and his co-defendant, Chad Edward Jones ("Defendant Jones").[1]  Count 1 charged Defendants with Possession of a Sawed-Off Shotgun, in violation of 26 U.S.C. §§ 5845(a), 5861(d) and 5871 and 18 U.S.C. § 2.[2]  Count 2 charged Defendants with Possession of a Firearm with an Obliterated Serial Number, in violation of 18 U.S.C. §§ 922(k), 924(a)(1)(B) and 924(a)(2).[3]  Count 3 charged Defendant Jones with being a Felon in Possession of a

---

[1] On October 22, 2008, a grand jury returned a three-count Indictment (docket no. 1) against Defendant Jones.

[2] "It shall be unlawful for any person [. . .] to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d).  A "firearm" is "a shotgun having a barrel or barrels of less than 18 inches in length," or "a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." 26 U.S.C. § 5845(a)(1) & (2).

[3]     It shall be unlawful for any person knowingly to [. . .] possess
        or receive any firearm which has had the importer's or

(continued...)

Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[4]

On January 7, 2009, Defendant Hawkins pled guilty to Counts 1 and 2 of the Superseding Indictment before a Magistrate Judge pursuant to a plea agreement ("Plea Agreement") (docket no. 50-2). On the same date, the Magistrate Judge filed a Report and Recommendation (docket no. 51), in which he recommended that the undersigned accept Defendant Hawkins's guilty plea. On January 22, 2009, the undersigned accepted Defendant Hawkins's guilty plea.

On April 23, 2009, the United States Probation Office ("USPO") released a draft of Defendant Hawkins's Presentence Investigation Report ("PSIR"). Both parties lodged objections to the PSIR. On June 3, 2009, the USPO released the Amended and Final Copy of the PSIR (docket no. 57).

On June 10, 2009, Defendant Hawkins filed his Sentencing Memorandum ("Def. Sent. Mem.") (docket no. 60). On June 17, 2009, the government filed its Sentencing Memorandum ("Gov. Sent. Mem.") (docket no. 61).

On July 1, 2009, the court commenced Defendant Hawkins's sentencing hearing

---

[3](...continued)
> manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(k).

[4]
> It shall be unlawful for any person [. . .] who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year [. . .] to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

("Hearing"). Assistant United States Attorney C.J. Williams represented the government. Attorney F. David Eastman represented Defendant Hawkins, who was personally present. At the Hearing, the court received evidence, heard argument, listened to the oral statement of one of the victims and listened to Defendant Hawkins's allocution. Because of the complexity of the issues presented, the court reserved ruling pending the instant sentencing memorandum. The court advised the parties it would take the sentencing issues under advisement, issue a written opinion and then reconvene the Hearing to impose sentence.

At the Hearing, the court advised the parties that it was considering an upward variance from Defendant Hawkins's advisory Sentencing Guidelines range. The court invited the parties to file memoranda on the variance issue on or before July 6, 2009. On July 6, 2009, Defendant Hawkins filed a Supplemental Sentencing Memorandum ("Def. Supp. Sent. Mem.") (docket no. 75) on the variance issue. On July 21, 2007, the government filed a memorandum in response to Defendant Hawkins's Supplemental Sentencing Memorandum (docket no. 77).

All contested issues in Defendant Hawkins's sentencing are now fully submitted and ready for decision. On August 10, 2009, at 8:30 a.m., the court shall reconvene the Hearing and impose sentence.

### III.   SENTENCING FRAMEWORK

A "district court should begin [a sentencing proceeding] with a correct calculation of the [defendant's] advisory Sentencing Guidelines range." *United States v. Braggs*, 511 F.3d 808, 812 (8th Cir. 2008). A defendant's Guidelines range "is arrived at after determining the appropriate Guidelines range and evaluating whether any traditional Guidelines departures are warranted." *United States v. Washington*, 515 F.3d 861, 865 (8th Cir. 2008).

"[A]fter giving both parties a chance to argue for the sentence they deem appropriate, the court should consider all of the factors listed in 18 U.S.C. § 3553(a) to

determine whether they support the sentence requested by either party." *Braggs*, 511 F.3d at 812. "The district court may not assume that the Guidelines range is reasonable, but instead 'must make an individualized assessment based on the facts presented.'" *Id.* (quoting *Gall v. United States*, 128 S. Ct. 586, 597 (2007)); *see, e.g.*, *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable.").

The district court "has substantial latitude to determine how much weight to give the various factors under § 3553(a)." *United States v. Ruelas-Mendez*, 556 F.3d 655, 657 (8th Cir. 2009); *see also United States v. Feemster*, No. 06-2059, 2009 WL 2003970, *7 (8th Cir. July 13, 2009) (en banc) ("'[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable.'" (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)). "If the court determines that a sentence outside of the Guidelines is called for, it 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Braggs*, 511 F.3d at 812 (quoting *Gall*, 128 S. Ct. at 597). "The sentence chosen should be adequately explained so as 'to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Id.*

## IV. EVIDENTIARY RULES

The court makes findings of fact by a preponderance of the evidence. *See, e.g.*, *United States v. Bah*, 439 F.3d 423, 426 n.1 (8th Cir. 2006) ("[J]udicial fact-finding using a preponderance of the evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner."). The court considers a wide variety of evidence, including the undisputed portions of the PSIR, the Plea Agreement and the evidence the parties introduced at the Hearing. The court does not "put on blinders" and only consider the evidence directly underlying Defendant Hawkins's offenses of

conviction. In calculating Defendant Hawkins's Guidelines range, for example, the court applies the familiar doctrine of relevant conduct. *See* USSG §1B1.3 (2008). The Eighth Circuit Court of Appeals has repeatedly held that a district court may consider uncharged, dismissed and even acquitted conduct at sentencing. *See, e.g.*, *United States v. Whiting*, 522 F.3d 845, 850 (8th Cir. 2008); *United States v. Bradford*, 499 F.3d 910, 922 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 1446 (2008). When relevant and "accompanied by sufficient indicia of reliability to support the conclusion that it [was] probably accurate," the court credits hearsay. *United States v. Sharpfish*, 408 F.3d 507, 511 (8th Cir. 2005).

## V. FACTS

The following facts are drawn from the uncontested portions of the PSIR, the Plea Agreement and the evidence presented at the Hearing:[5]

At some point in early to mid-July of 2008, Defendant Hawkins hatched a robbery plan. Defendant Hawkins spoke of this plan to Defendant Jones and Defendant Jones's 17-year-old brother, J.J. (together, the "trio"). The plan consisted of a nighttime robbery of a residence located at 597 Cedar Valley Road in West Branch, Iowa (the "Residence"). Tom Cannon and his wife, Julie Cannon, lived at the Residence along with their minor daughter, whom Defendant Hawkins had dated. Because of his relationship with the Cannons, Defendant had been inside the Residence on multiple occasions and learned the security access code to the Residence.

M.T., a minor cousin of Defendant Jones and J.J., testified before a grand jury about a conversation she overheard between the trio during which Defendant Hawkins broached the subject of the robbery:

> Q. Tell the Grand Jury what you heard when you were in the living room.

---

[5] The court makes additional factual findings in conjunction with its conclusions of law.

A. Basically just that [Defendant Hawkins] was talking about his ex-girlfriend that I met once before and he was dating her and she had this ring on that was her mom's and he wanted to take it. He said that they should go in there and take the ring for 25 grand.

* * *

Q. Did [Defendant Hawkins] mention using a gun to do that?

A. Yes.

Q. What did he say about that?

A. He said they should just go in there and tie them up with guns.

Gov. Ex. 4 (docket no. 73-5), at 3.

## A. Preparation for Robbery

The trio took several steps to prepare for the robbery in a shop on a farm located in Tipton, Iowa. Defendant Jones and J.J. lived on the farm.

First, the trio sawed off the barrel of a Remington Model 870 Express 12 gauge pump-action shotgun (the "Firearm"). Defendants decided to shorten the barrel of the Firearm to make it easier to handle during the robbery. Defendant Jones sawed off the Firearm with a hacksaw in Defendant Hawkins's presence. After sawing off the Firearm, the barrel had a length of less than 18 inches. More specifically, the altered barrel length was 13 and 7/16 inches and the altered Firearm had an overall length of 33 and 5/8 inches.

Second, the trio filed the serial number off the Firearm. The trio decided to grind the serial number off so that no one could identify the Firearm. J.J., while in Defendants' presence, removed the serial number from the Firearm.

Third, the trio added a strap to the butt end of the Firearm. Defendant Jones carved the words "MONEY MAKER" into the side of the Firearm's receiver. PSIR at ¶ 22 (emphasis in original).

Fourth, after the trio made all of these alterations, each member handled and tested

the Firearm. Each member of the trio knew about all the alterations prior to robbing the Residence.

Fifth, during the early evening on July 18, 2008, Defendant Hawkins and J.J. traveled to the area surrounding the Residence. Defendant Hawkins and J.J. scouted the area and selected a location to park a getaway vehicle during the robbery.

## B. Robbery

In the early morning hours of July 19, 2008, J.J. drove the trio to the Residence. J.J. dropped Defendants off at the Residence and then parked the vehicle in the location that J.J. and Defendant Hawkins had previously selected. J.J. remained in the vehicle as the get-away driver.

Defendants entered the Residence using the access code Defendant Hawkins had obtained while dating the Cannons' minor daughter. Defendants wore dark clothing, masks and gloves. Defendant Hawkins wore a stuffed brassiere so he would appear to be a woman to mislead the victims and law enforcement into believing the suspects were a man and a woman rather than two men. Defendant Jones carried the Firearm.

Defendants entered the Cannons' master bedroom where Tom and Julie Cannon were asleep in bed. Defendant Jones loudly and aggressively announced their presence. Then, Defendant Jones pointed the sawed-off shotgun at the Cannons. Defendant Jones ordered them to remain in bed.

Tom Cannon jumped from his bed and began wrestling with Defendant Jones to gain control of the Firearm. Defendant Hawkins fled the bedroom and the Residence. Using the Firearm, Defendant Jones struck Tom Cannon in the head and chest several times. Tom Cannon bled from his head, face and body.

Julie Cannon joined the struggle between Defendant Jones and Tom Cannon and wrestled the Firearm away from Defendant Jones. Then, Defendant Jones fled the bedroom and the Residence. Julie Cannon attempted to fire the Firearm at Defendant

Jones as he fled the Residence; however, she was unable to do so because the safety lock was enabled.

Defendants ran to the getaway vehicle. J.J. drove them away from the scene of the robbery. While J.J. drove, Defendants removed the clothing they had worn during the robbery. They placed a portion of this clothing into a plastic garbage bag and threw it into a roadside ditch as J.J. drove.

## C.  Investigation of Robbery

After the attempted robbery, the trio concocted a false story in the event they were questioned about it. Law enforcement questioned Defendant Hawkins about the robbery on multiple occasions and he repeatedly lied about his involvement.

On July 23, 2008, Defendant Hawkins implicated Defendant Jones and J.J. as participants in the robbery. On that date, Defendant Jones and J.J. were arrested. Defendant Hawkins continued to maintain that he was not involved with the robbery, despite failing a polygraph examination.

On August 7, 2008, law enforcement discovered the garbage bag approximately 1.7 miles away from the Residence. In the garbage bag, law enforcement located a key to the ignition of Defendant Hawkins's automobile.

On November 3, 2008, Special Agent Michael Wempen ("S/A Wempen") of the Bureau of Alcohol, Tobacco, Firearms and Explosives approached Defendant Hawkins about the robbery. When confronted with evidence about his involvement in the robbery, Defendant Hawkins lied to S/A Wempen and continued to deny involvement in the attempted robbery. More specifically, Defendant Hawkins provided a false explanation for a photograph taken two hours before the attempted robbery that depicted him wearing dark clothing and a brassiere. S/A Wempen notified Defendant Hawkins that it would be a crime to lie to him, a federal agent, about his involvement in the robbery. However, Defendant Hawkins continued to maintain that he was not involved in the robbery.

## VI.  ISSUES

The parties raise three issues with the USPO's calculation of Defendant Hawkins's advisory Sentencing Guidelines range: whether the court should apply (1) the cross reference in USSG §2K2.1(c)(1)(A) to USSG §2X1.1; (2)  the two-level enhancement in USSG §3B1.4 for using a minor to commit a crime; and (3)  the two-level enhancement in USSG §3C1.1 for obstructing justice.  The government bears the burden of proof on all of these issues.  *See United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir. 2001) (stating that the government bears the burden to prove sentencing enhancements).  Additionally, the USPO suggested the court specifically consider the amount of restitution to order in the instant sentencing.  At the Hearing, however, the parties agreed to restitution in the amount of $2,764.72.  Accordingly, the court need not address restitution in the instant Sentencing Memorandum.

## VII.  OFFENSE LEVEL

The parties agree that Defendant Hawkins's base offense level is **18**.  *See* USSG §2K2.1(a)(5) and App'x. A (Statutory Index)).  The parties also agree that Defendant Hawkins is subject to: (1) a **four-level** upward adjustment pursuant to USSG §2K2.1(b)(4) because the Firearm had "an altered or obliterated serial number"; and (2) a **four-level** upward adjustment pursuant to USSG §2K2.1(b)(6) because he used the Firearm in connection with another felony offense, that is, the robbery.  This brings Defendant Hawkins's offense level to **26**.

### A.  Cross Reference—USSG §2K2.1(c)(1)(A)

As a general rule, defendants convicted of firearms charges such as Defendant Hawkins are sentenced under §2K2.1.  However, "[i]f the defendant used or possessed any firearm [. . .] in connection with the commission or attempted commission of another offense," the court should ordinarily apply the cross reference in §2K2.1(c)(1)(A) to §2X1.1 "[with] respect to that other offense if the resulting offense level is greater than

10

that determined" under §2K2.1. USSG §2K2.1(c)(1)(A). "The phrase 'in connection with' means that the firearm must actually facilitate the other felony offense and not be merely present by accident or coincidence." *United States v. Olthoff*, 437 F.3d 729, 731 (8th Cir. 2006). "'Another offense' [. . .] means any federal, state or local offense, other than the explosive or firearms possession or trafficking offense, regardless of whether a criminal charge was brought, or a conviction obtained." USSG §2K2.1 cmt. (n.14(C)). In the instant action, the USPO applied the cross reference because it concluded Defendant Hawkins used the Firearm in connection with the robbery.

Defendant Hawkins raises a two-pronged objection to the application of the cross reference. First, Defendant Hawkins argues that the government cannot satisfy its burden to apply the cross reference because it cannot show that he used the Firearm in connection with another offense for which he was convicted. Second, Defendant Hawkins argues that the underlying offense is burglary, not robbery.

### 1. *Burden of proof*

Defendant Hawkins argues that the government must meet a burden of proof more stringent than a preponderance of the evidence to prove the underlying substantive offense. In *United States v. Smith*, 997 F.2d 396 (8th Cir. 1993), the Eighth Circuit Court of Appeals discussed the burden of proof the government must meet to apply the cross reference to §2X1.1. The Eighth Circuit Court of Appeals held that the government had to prove the conduct for the cross reference by a preponderance of the evidence. *Smith*, 997 F.2d at 397. In the instant sentencing, this requires the government to prove by a preponderance of the evidence that Defendant Hawkins robbed or attempted to rob the Residence.

Defendant Hawkins asks the court to ignore the Eighth Circuit Court of Appeals's precedent and apply the approach outlined in Judge Bright's dissent in *Smith*. In his dissent, Judge Bright argued that the cross reference in §2K2.1(c)(1)(A) "in effect triggers

a provision which is inapplicable unless the defendant *has been convicted* of committing the substantive offense." *Smith*, 997 F.2d at 399 (Bright, J., dissenting) (emphasis added). The Eighth Circuit Court of Appeals declined to adopt Judge Bright's approach. Since *Smith*, the Eighth Circuit Court of Appeals has continued to apply the *Smith* majority's preponderance standard to the cross reference to §2X1.1. *See, e.g.*, *United States v. Raglin*, 500 F.3d 675, 677 (8th Cir. 2007) (applying 2K2.1 cross reference and noting: "When there is no prior conviction for that offense, the government must prove at sentencing (by a preponderance of the evidence) that the defendant committed it."); *United States v. White*, 354 F.3d 841, 844 (8th Cir. 2004) (recognizing that acquitted and uncharged conduct can be considered in cross reference to §2X1.1 as long as it is proved by a preponderance of the evidence). Because the court is bound to follow precedent from the Eighth Circuit Court of Appeals, *Hood v. United States*, 342 F.3d 884, 886-87 (8th Cir. 2005), it overrules this objection and applies the preponderance standard to §2X1.1.

## 2. *Robbery as underlying offense*

In Defendant Hawkins's Objections to the PSIR, he states "that the underlying crime that the [USPO] is referring to in this case is actually a burglary," not a robbery. PSIR at ¶ 45. However, it appears Defendant Hawkins abandoned this argument because he failed to mention it in his Sentencing Memorandum or at the Hearing. The court assumes without deciding that Defendant Hawkins committed both burglary *and* robbery and elects to analogize the trio's actions to robbery rather than burglary. The court finds the comparison to robbery is appropriate because robbery requires the use of force or the threat of use of force, while burglary does not. *Compare* 18 U.S.C. § 1951 (defining "robbery" as "the unlawful taking or obtaining of personal property from the person [. . .] against his will, by means of actual or threatened force, or violence, or fear of injury") with 18 U.S.C. §§ 2115 & 2117 (describing burglary of post office and burglary of a carrier facility, respectively, as "breaking and entering" with intent to commit a felony or

12

larceny therein). In the instant action, Defendants used force and threatened to use force to steal from the Cannons. The court also notes the Plea Agreement contains Defendant Hawkins's stipulation that the trio "made plans to stage a middle-of-the-night *robbery*" of the Residence. Plea Agreement at ¶ 31.A (emphasis added). The court finds that the uncontested portions of the PSIR and the facts contained in the Plea Agreement preponderate that Defendant Hawkins committed or attempted to commit a robbery with the Firearm.

### 3.    *Application*

Accordingly, the court **applies the cross reference found at USSG §2K2.1(c)(1)(A) to §2X1.1**. Section 2X1.1 provides that a defendant's base offense level should be "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." USSG §2X1.1. The Guidelines section for robbery is USSG §2B3.1. The parties do not dispute that, if the court applies the §2X1.1 cross reference for robbery, Defendant Hawkins's base offense level is **20**. The parties also do not dispute that Defendant is subject to: (1) a **six-level** upward adjustment pursuant to §2B3.1(b)(2) because the Firearm was "otherwise used" in the commission of the robbery;[6] and (2) a **two-level upward adjustment** pursuant to §2B3.1(b)(3)(A) because a victim, Tom Cannon, sustained bodily injury in the Robbery. This brings Defendant Hawkins's cross reference offense level to **28**.

---

[6] Defendant Hawkins initially objected to this upward adjustment. Defendant Hawkins argued that a five-level adjustment pursuant to USSG §2B3.1(b)(2)(C) was more appropriate because he merely brandished the Firearm. Defendant Hawkins expressly abandoned this objection in his Sentencing Memorandum. The court finds this enhancement is appropriate because Defendant Hawkins "otherwise used" the Firearm when he and Defendant Jones used it to threaten and strike the Cannons.

### B. Using a Minor

The government argues that the court should apply a **two-level** upward adjustment because Defendant Hawkins "used or attempted to use a person less than eighteen years of age," that is, J.J., "to commit the offense or assist in avoiding detection of, or apprehension for, the offense[.]" USSG §3B1.4. The USPO declined to apply this upward adjustment when calculating Defendant Hawkins's offense level in the PSIR.

The parties stipulated to the application of the §3B1.4 upward adjustment in paragraph 13 of the Plea Agreement. However, the court is not bound to the terms of a plea agreement outside the context of Federal Rule of Criminal Procedure 11(c)(1)(C). *United States v. Keller*, 413 F.3d 706, 708 (8th Cir. 2005). Despite initially agreeing to apply this enhancement, Defendant Hawkins now asks the court to find that he did not "use" a minor to commit the offense. *See* Def. Supp. Sent. Mem. at 5 ("[T]he Defendant in this case did not **use** a minor in the commission of this crime.") (Emphasis in original.). Defendant Hawkins's change in position on this issue is a clear breach of the Plea Agreement.

### 1. Whether Defendant Hawkins "used" J.J.

For purposes of §3B1.4, "'[u]sed or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." USSG §3B1.4 cmt. (n.1). For this enhancement to apply, "the defendant must affirmatively involve or incorporate the minor into the commission of the offense[.]" *United States v. Mentzos*, 462 F.3d 830, 841 (8th Cir. 2006) (citing *United States. v. Paine*, 407 F.3d 958, 965 (8th Cir. 2005)). "'Used or attempted to use' does not [. . .] require active involvement on behalf of the minor." *Paine*, 407 F.3d at 965 (citing *United States v. Castro-Hernandez*, 258 F.3d 1057, 1060 (9th Cir. 2001)). "'The unambiguous legislative design of [§]3B1.4 is to protect minors as a class from being "solicited, procured, recruited, counseled, encouraged, trained, directed, commanded, intimidated,

or otherwise used" to commit crime.'" *Id.*, 407 F.3d at 965 (quoting *United States v. McClain*, 252 F.3d 1279, 1286 (11th Cir. 2001)).

The USPO did not apply the §3B1.4 enhancement. The USPO stated that Defendant Hawkins did not "use" J.J. in the commission of the robbery; rather, J.J. was a willing and equal participant in the trio. After considering the evidence, the court finds that Defendant Hawkins affirmatively incorporated J.J. into the robbery. The grand jury testimony of M.T. establishes that Defendant Hawkins conceived of the plan to rob the Cannons and actively recruited J.J. to participate in the robbery by speaking to J.J. about it. "Among other things, a defendant may 'use' a minor by asking the minor to accompany him or her to a crime." *United States v. Voegtlin*, 437 F.3d 741, 747 (8th Cir. 2006); *see also Paine*, 407 F.3d at 965 (holding that "asking [the defendant's] son to accompany him on the robbery because he would not otherwise have had the courage to commit the crime" is sufficient "use" of a minor to apply §3B1.4). The grand jury testimony establishes that Defendant Hawkins came up with the idea to rob the Cannons while using a firearm. The grand jury testimony also establishes that Defendant Hawkins asked J.J., a minor, to help him commit the robbery. Under either definition of "use," it is clear that Defendant Hawkins took affirmative steps to involve a minor, J.J., in the commission of the robbery. This is not a case in which a minor was an equal partner and merely "participated" in the offense; Defendant actively recruited him to join a conspiracy that he hatched.

### 2. *Application*

Accordingly, the court applies the **two-level** enhancement in USSG §3B1.4. This brings Defendant Hawkins's offense level to **30**.

## C. Obstruction of Justice

The government argues that the court should apply a **two-level** upward adjustment pursuant to USSG §3C1.1 for obstruction of justice. Section 3C1.1 provides:

> If (A) the defendant willfully obstructed or impeded, or
> attempted to obstruct or impede, the administration of justice

15

> with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense by **2** levels.

USSG §3C1.1 (emphasis in original). Obstructive conduct includes "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so[.]" *Id.* cmt. (n.4(a)). Willful obstructive conduct occurs when a defendant has "knowledge of an investigation, or at least [. . .] a correct belief that an investigation is probably underway." *United States v. Oppedahl*, 998 F.2d 584, 586 (8th Cir. 1993).

### 1. *Improper influence over witness*

The government argues that the court should apply the upward adjustment for obstruction of justice because Defendant Hawkins improperly tried to influence a grand jury witness's testimony. During the investigation of Defendant Hawkins's involvement in the robbery, Defendant Hawkins told law enforcement that he had attended a party during the night in question. This statement was true. However, Defendant Hawkins lied to law enforcement about the time he left that party. Defendant Hawkins told law enforcement that he had left the party around 12:30 or 1:00 a.m.

Defendant Hawkins's younger brother, Cyle Hawkins, testified before the grand jury concerning the circumstances surrounding the robbery. Cyle Hawkins had attended the same party as Defendant Hawkins on the night of the robbery. Cyle Hawkins corroborated his brother's false alibi by testifying that he knew that Defendant Hawkins had not left the party until approximately 1:00 a.m. However, Cyle Hawkins admitted that, prior to his grand jury testimony, Defendant Hawkins told him that he (Defendant Hawkins) had not left the party until around 1:00 a.m. Cyle Hawkins also testified that, after he had learned about the investigation into the robbery, he had overheard Defendant Hawkins tell another partygoer that he had not left the party until approximately 1:00 a.m.

The undisputed facts show that, if Defendant Hawkins had left the party around 1:00 a.m., he would have been unable to participate in the robbery.

This evidence shows that Defendant attempted to influence his brother, a witness (and potentially another witness who had attended the party), into misremembering or lying about Defendant's whereabouts during the robbery. This conduct is material because it would have provided Defendant Hawkins with an alibi for the robbery. The evidence shows Defendant Hawkins was aware that law enforcement was investigating his involvement in the robbery at the time he tried to influence his brother's grand jury testimony.

This conduct warrants an enhancement for obstruction of justice on two grounds: (1) attempting to unlawfully influence a witness; and (2) attempting to suborn perjury. *See* USSG §3C1.1 cmt. (n.4(a) & (b)); *United States v. Garin*, 103 F.3d 687, 689 (8th Cir. 1996) (holding district court did not err in applying enhancement for obstruction of justice, where the defendant persuaded a witness to lie to the grand jury); *United States v. Johnston*, 973 F.2d 611, 614 (8th Cir. 1992) (affirming district court's finding that defendant attempted to obstruct justice by writing letters from jail to his father and his wife asking them to provide a false alibi for him); *United States v. Felix*, 286 F.3d 118, 120 (2d Cir. 2002) (finding the defendant's attempt to support false alibi by asking friends to corroborate a false alibi when speaking to the police during an investigation warranted obstruction enhancement).

### 2. *Other bases for enhancement*

The court also notes that there are other bases upon which it may apply the enhancement for obstruction of justice. The undisputed facts in the PSIR state that Defendant Hawkins lied repeatedly to local law enforcement officers and S/A Wempen about the robbery. The court recognizes that "[l]ying to investigators in and of itself does not support a §3C1.1 enhancement for obstructing justice." *United States v. Sitting Bear*,

436 F.3d 929, 934 (8th Cir. 2006). In addition, a defendant's misrepresentations "must have been material to the investigation." *Id.* "Further, general denials of guilt that are not made under oath do not support an obstruction enhancement." *Id.* (citing *United States v. Yankton*, 986 F.2d 1225, 1228 (8th Cir. 1993)).

However, Defendant Hawkins's lies were more than mere denials of guilt. Defendant Hawkins falsely told law enforcement that Defendant Jones and J.J. had confessed the robbery to him. This led law enforcement to believe that Defendant Jones and J.J. were the only two individuals involved in the robbery. Defendant Jones also falsely told law enforcement that he had attended a party at the time of the robbery in an attempt to fabricate an alibi. These misrepresentations were clearly material to the investigation of the robbery.

The court also finds that Defendant Hawkins's misrepresentations "significantly obstructed or impeded the official investigation or prosecution of the instant offense." USSG §3C1.1 cmt. (n. 4(g)). By leading law enforcement to believe that he was not involved in the robbery, Defendant Hawkins cost the government valuable time, manpower and other resources. *See Sitting Bear*, 436 F.3d at 934 (finding that defendant's "exculpatory explanations and attempt to point the finger at his codefendant without providing the full picture of his own actions" demonstrated that his conduct had significantly impeded law enforcement's investigation into the offense). Indeed, the government's evidence shows that Defendant Hawkins's lies to law enforcement began in July of 2008 and continued through November of 2008. The government's evidence also shows that Defendant Hawkins's lies led law enforcement to administer a polygraph examination on him. Even after he failed the polygraph examination, Defendant Hawkins's lies to law enforcement persisted. This also shows that Defendant Hawkins's misrepresentations significantly impeded the investigation into the offense. *See United States v. Penn*, 974 F.2d 1026, 1030 (8th Cir. 1992) (noting that the delay and expense

that resulted from a polygraph examination "demonstrates that [defendant]'s actions obstructed and impeded the investigation").

### 3. *Application*

Accordingly, the court applies the **two-level** enhancement for obstruction of justice pursuant to USSG §3C1.1. This brings Defendant's offense level to **32**.

## D. *Acceptance of Responsibility*

Next, the court turns to consider whether Defendant Hawkins is entitled to a **two-level** reduction for acceptance of responsibility under USSG §3E1.1(a). Defendant Hawkins bears the burden to show he is entitled to this reduction. *See United States v. Stoltenberg*, 309 F.3d 499, 500 (8th Cir. 2002) ("A defendant has the burden to establish his entitlement to an acceptance-of-responsibility reduction.").

The fact Defendant Hawkins received an upward adjustment for obstructing justice complicates the court's ability to award him a reduction for acceptance of responsibility:

> Conduct resulting in an enhancement under §3C1.1 (obstruction or impeding the administration of justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may be, however, extraordinary cases in which adjustments under both §§3C1.1 and 3E1.1 apply.

USSG §3E1.1 cmt. (n.4). Neither party addressed whether Defendant Hawkins's case is "extraordinary" and eligible for the simultaneous application of §3C1.1 and §3E1.1.

"[M]ere cessation of obstructive conduct coupled with a guilty plea to the underlying offense" does not "necessarily make[] a case extraordinary for purposes of §3E1.1." *United States v. Honken*, 184 F.3d 961, 969 (8th Cir. 1999). That said, "there is no magic formula for defining an 'extraordinary case.'" *Id.*

> To determine whether a case is "extraordinary," the district court should [. . .] take[] into account the totality of the circumstances, including the nature of the [defendant]'s obstructive conduct and the degree of [the defendant]'s

acceptance of responsibility.  Among other things, the district court should [. . .] consider[] whether, for example, the obstruction of justice was an isolated incident early in the investigation or an on-going effort to obstruct the prosecution. It should [. . .] consider[] whether [the defendant] voluntarily terminated his obstructive conduct, or whether the conduct was stopped involuntarily by law enforcement.  The district court should [. . .] note[] whether [the defendant] admitted and recanted his obstructive conduct, or whether he denied obstruction at sentencing.  Moreover, [. . .] the district court should [. . .] also weigh[] not only whether the defendant pleaded guilty to the underlying offense but also whether he assisted in the investigation of his offense and the offenses of others.

*Id.* at 968 (internal citations omitted).

The court finds Defendant has not met his burden to prove he clearly demonstrated acceptance of responsibility.  The court recognizes that Defendant Hawkins pled guilty to two counts and has admitted a factual basis for these offenses in the Plea Agreement. However, when considering the totality of the circumstances, this is not an "extraordinary case" in which both an upward adjustment for obstruction of justice and a downward adjustment for acceptance of responsibility apply.  Defendant Hawkins has presented no evidence that he has assisted in any investigation surrounding the instant action.  Indeed, at the Hearing, Defendant Hawkins did not admit his obstructive conduct.  Instead, he maintained that he had not engaged in any obstructive conduct.

The court also finds that there is a second, independent reason to deny Defendant Hawkins a reduction for acceptance of responsibility.  In the Plea Agreement, Defendant Hawkins stipulated to the application of the two-level upward adjustment for use of a minor.  However, in his Supplemental Sentencing Memorandum, he argues that this enhancement should not apply.  This is ample reason to deny Defendant Hawkins a downward adjustment for acceptance of responsibility.  *See United States v. Blaso*, 262 F. App'x 463, 464-65 (3d Cir. 2008) (affirming district court's denial of reduction for

acceptance of responsibility largely due to the defendant's breach of his plea agreement). Therefore, even if Defendant Hawkins's case is "extraordinary" under the factors enumerated in *Honken*, he is not entitled to a reduction for acceptance of responsibility in any event.

Accordingly, the court holds Defendant Hawkins is not entitled to a downward adjustment for acceptance of responsibility under §3E1.1. Defendant Hawkins's adjusted offense level remains **32**.

## VIII. CRIMINAL HISTORY CATEGORY

The parties do not dispute Defendant Hawkins's criminal history category under the Guidelines. Defendant Hawkins is a Criminal History Category **I**.

## IX. ADVISORY SENTENCING GUIDELINES RANGE

Defendant Hawkins is a **Criminal History Category I** with a total adjusted offense level of **32**. His advisory Sentencing Guidelines range is **121 to 151 months of imprisonment**. *See* USSG Sentencing Table.

## X. FACTORS IN 18 U.S.C. § 3553(a)

The court considers all of the factors in 18 U.S.C. § 3553(a) to determine Defendant Hawkins's sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or
> vocational training, medical care, or other correctional
> treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established
> for [. . .] the applicable category of offense committed by the
> applicable category of defendant as set forth in the guidelines
> [. . .] issued by the Sentencing Commission[;]
>
> (5) any pertinent policy statement [. . .] issued by the
> Sentencing Commission[;]
>
> (6) the need to avoid unwarranted sentence disparities among
> defendants with similar records who have been found guilty of
> similar conduct; and
>
> (7) the need to provide restitution to any victims of the
> offense.

18 U.S.C. § 3553(a). The court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" above. *Id.* However, the court need not explicitly set forth its analysis of all the § 3553(a) factors. *See, e.g.*, *United States v. Lamoreaux*, 422 F.3d 750, 756 (8th Cir. 2005) (citing *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005) ("Nothing in § 3553(a) or in the *Booker* remedy opinion requires 'robotic incantations' that each statutory factor has been considered.").

After considering the factors in § 3553(a), the court concludes a sentence of 121 months of imprisonment is appropriate for Defendant Hawkins. The court finds that this sentence reflects the seriousness of offense, which included Defendant Hawkins's violent, premeditated acts toward the Cannons. Defendant Hawkins devoted substantial time and resources in preparing for the robbery. The trio's use of the Firearm prior to the robbery indicates that Defendants were prepared to fire it, as each member of the trio handled and tested it. Defendant Hawkins also scouted the area surrounding the Cannons' home to park

the trio's getaway vehicle. Clearly, Defendant Hawkins intended that his offense conduct would have serious consequences. The court also finds that this sentence promotes respect for the law and provides a just punishment for the offense. A lesser sentence would not reflect the Cannons' pain and suffering caused by Defendant Hawkins. As Julie Cannon stated at the Hearing, she no longer feels safe in her own home and her life has been completely changed due to Defendant Hawkins's actions.

The court also finds this sentence is necessary to protect the public from further crimes of Defendant Hawkins, whose actions demonstrate a blatant disregard for the health and safety of others. The undisputed facts in the PSIR indicate that the Firearm was loaded. The Cannons could have been seriously injured or killed during the robbery if the safety lock had not been enabled. Clearly, Defendant Hawkins is a danger to those in his community—he invaded the home of his own friends and assaulted them with a loaded sawed-off shotgun. When his partner, Defendant Jones, attempted to shoot the Cannons, Defendant Hawkins did not come to his senses and try to prevent him from causing bodily injury to the Cannons. Instead, he ran away from the situation in order to protect himself from detection.

The court notes that, if it erred in applying either the enhancement for use of a minor pursuant to USSG §3B1.4 or the enhancement for obstruction of justice pursuant to USSG §3C1.1, Defendant Hawkins's Guidelines sentencing range would be 97-121 months of imprisonment. Were this Defendant Hawkins's Guidelines sentencing range, the court would have sentenced Defendant Hawkins at the top end of the Guidelines range, that is, 121 months of imprisonment—the same term of imprisonment it shall impose when the court reconvenes the Hearing.

## XI. ALTERNATE VARIANCE

In the event the court erred by applying both the two-level enhancements for use of

a minor and obstruction of justice, at a minimum, Defendant Hawkins's total offense level would be 28 and he would be Criminal History Category I. Defendant Hawkins's advisory Sentencing Guidelines range would be 78-97 months of imprisonment. Under this scenario, however, after considering all of the § 3553(a) factors, the court would vary upward and still impose a sentence of 121 months of imprisonment. The court recognizes that the Eighth Circuit Court of Appeals has previously held that such alternative variances sometimes will not survive appellate scrutiny. *See, e.g.*, *United States v. Bah*, 439 F.3d 423, 430-32 (8th Cir. 2006). However, *Bah* is distinguishable from the present case, because here the court is basing its alternative variance upon specific, identifiable alternative ranges and has not imposed a "blanket identical alternative sentence." *Cf. Bah*, 439 F.3d at 431 (criticizing the district court for imposing a "blanket alternative sentence," because it "effectively [. . .] ignored the requirement [. . .] to first determine the appropriate guidelines sentencing range for the alternative sentence" (citations and internal quotation marks omitted)). In other words, there is a meaningful difference between identifying an alternative variance from a specific alternative advisory Sentencing Guidelines range and announcing an alternative sentence regardless of what the advisory Sentencing Guidelines range might be. In the former instance, the advisory Sentencing Guidelines retain their status as "the starting point and the initial benchmark," *Gall*, 128 S. Ct. at 596-97, and there is no danger that the district court has wholly ignored the advisory Sentencing Guidelines.

When the court considers all of the § 3553(a) factors, the reasons for a sentence of 121 months of imprisonment are clear because the Guidelines calculation does not account for a number of highly relevant factors. For instance, the Guidelines do not take into account the impact that Defendant Hawkins's conduct has had on the Cannons. As indicated in the Victim Impact Statement in the PSIR and the victim statement offered at the Hearing, Defendant Hawkins's actions have deprived the Cannons of the ability to feel

safe in their own home. Defendants awakened the Cannons in the middle of the night and threatened them with a loaded sawed-off shotgun. When Defendant Jones "racked" a round of ammunition into the chamber of the Firearm, Tom Cannon advanced toward Defendant Jones to gain control of the loaded Firearm. Defendant Jones then pointed the Firearm at Tom Cannon and pulled the trigger. Because the safety lock was enabled, the Firearm did not discharge. The Cannons wrestled with Defendant Jones for control of the Firearm and were injured by Defendant Jones when they did so. The Cannons have suffered greatly from Defendant Hawkins's vicious acts, and will continue to suffer mental anguish and loss of enjoyment of their lives.

Additionally, the Guidelines do not adequately reflect the danger Defendant Hawkins poses to his community. As stated earlier, Defendant Hawkins assaulted his own friends. Defendant Hawkins exploited his relationship with the Hawkins's minor daughter by using the access code he had obtained while dating her to further his carefully crafted criminal undertaking. The Guidelines also do not account for the premeditated nature of Defendant Hawkins's offense. Defendant Hawkins spent a substantial amount of time devising, planning and preparing for the crime. This conduct included making a series of alterations to the Firearm, enlisting the assistance of Defendant Jones and J.J., scouting for a location to park the get-away vehicle and planning and wearing a disguise to foil investigation into the offense. A sentence of less than 121 months of imprisonment would not adequately punish Defendant Hawkins for this offense. Finally, the Guidelines calculation does not accurately account for Defendant Hawkins's criminal history. Although his criminal history is only Category I and suggests he had not previously engaged in any criminal conduct, he has a criminal past. Defendant Hawkins's unscored adult convictions include three convictions for possession of alcohol under the legal age and having a disorderly house. These unscored offenses demonstrate Defendant Hawkins's unwillingness to abide by the letter of the law and underscore the necessity of protecting

the public from Defendant Hawkins's actions.

## XII. DISPOSITION

After all applicable adjustments, the court finds Defendant Hawkins's final advisory Sentencing Guidelines range is **121 to 151 months imprisonment**. After considering all of the § 3553(a) factors, the court finds a **sentence of a term of a total of 121 months** is appropriate for Defendant Hawkins, consisting of 120 months on Count 1 and 60 months on Count 2, 59 months of which shall run concurrent with Count 1 and 1 month of which shall run consecutive to Count 1. The court shall impose a sentence consistent with this memorandum when it reconvenes the Hearing.

**IT IS SO ORDERED.**

**DATED** this 28th day of July, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA